Oral argument not to exceed 15 minutes per side. Ms. Klima, you may proceed for the appellant. Good afternoon. Jackie Klima on behalf of the appellant, Craig Schubiner, and I would like to reserve 5 minutes for rebuttal, please.   The case has a long and complicated history between these parties, but fortunately the issue in this appeal is pretty simple. It's whether or not the plaintiff has claimed damages for which it has not already been paid and or already has a judgment. So as a practical matter, there is an existing judgment that has been affirmed by the Michigan system for the balance on the initial note. Is that correct? It is for the complete deficiency after taking the foreclosure amount of $75 million, subtracting out the entire amount loaned to the receiver, all attorney fees for the receiver loan, that's how it got back up to $37 million from Washtenaw to Oakland. And then after that it was applied to the original construction loan, which was around $37 million. No, I'm sorry, I'm not asking about, I'm talking about the judgment. Yes. There's a judgment from the Michigan courts that represents everything that is owing on the note. Is that correct? Yes. Okay. That's what this is. Okay. This action is on the separate completion guarantee, right? Correct. Okay. And your argument is that any damages that would be due under the completion guarantee has already been paid through the share of sale? Yes. Okay. So as a practical matter, given that there's already this judgment against your client, I'm not sure what practical difference it makes. Well, now there are two judgments against my client for the same debt, and there's nothing saying if you collect one. Your position essentially is that there's been double recovery here and your client is having to pay the same damages twice. Exactly. Which is impermissible. Correct. But their argument is that the completion guarantee and the loan guarantee are two different obligations, which they are, right? They're two different means to collect on one obligation. Well, there was a construction, I mean the original guarantee is on the original loan. The completion guarantee guarantees the completion of the project, right? Correct. And that's been paid. Well, you mean the receiver loan? Yes. The receiver loan and the original loan, the actual principal has been paid. Why is there a difference between the $6 million deficiency and the $14 million judgment? Shouldn't it have been 14? Like the foreclosure judgment seems like it was too low. Well, the foreclosure judgment, Judge Brown took attorney fees out of the soft costs. That was one term of the receiver loan that was different from the original construction loan. If you go to the Exhibit A where they delineate what are hard costs and soft costs of construction. In the receiver loan, they added the receiver's attorney fees, the plaintiff's attorney fees, and the receiver's fees, and a bunch of consultant fees into soft costs of construction and then charged interest on top of that. Judge Brown took those out, if you look at the foreclosure judgment, and determined that the receiver loan was actually only $29 million. Then in Oakland County, those were added back in, and that's how it got back up to the $37 million. And then on top of it, the foreclosure happened in fall of 2018, and then the project was completed in February of 2019. So those completion costs were added into the Oakland County judgment. Plus, there was interest from 2014 through 2019 added, default interest from 2014 to 2019 added. Even though from 2014 to 2016 all interest had been paid, it wasn't in default. So it was already a double dip. Part of this is actually a triple dip, I believe, if I'm understanding these numbers. But that's why the state court judgment is $14 million. Right. That included some additional costs after the foreclosure. Assuming that that judgment is paid, are there any asserted costs or damages after that is paid that will not have been covered? I do not believe so. The one thing added to this was the settlement with Quandel. A what? There was a settlement with the original contractor who had been declared in default. That happened in 2018, so I think it should have been in the Oakland County judgment. I can't tell from the calculations whether it was or not. In any event, it should have been part of the original construction loan because it was incurred before the receiver. Those costs were incurred before the receiver was even appointed. From what I've seen, I haven't seen any proof that it's ever been paid. And from what I understand, payment is not triggered until the plaintiff resells the property to a third party. So it may never get paid. And if I'm wrong, I'll let Mr. Derosa correct me on that. I thought there was more guaranteed than the receiver loan, right? Well, is the completion guarantee you're saying is synonymous with the receiver loan? The actual money behind it. Essentially, if you look at the completion guarantee formula, which is in Section 3C, it says you add remaining unpaid and projected hard and soft costs, which should be zero because they're all paid. There are no projected hard and soft costs because it's done. All remaining projected costs to enable performance and satisfaction, that's all paid. So those two numbers are zero. From there, you subtract undisbursed loan accounts. There are no undisbursed loans, so that's zero. And you subtract the sums in the two bank accounts that Packard had, which is the construction reserve account and the construction disbursement account. Those were swept in 2016. So you have five zeros. That adds up to zero. And that's not the formula that was used by the plaintiff in this case. So there was really nothing left. Under this particular guarantee that can be collected in this case. And if I understand correctly, the trial judge, the district judge, didn't – I mean, conceptually, I guess there are two arguments. One is you can't get double recovery for the same loss. And the second one is even if you follow the formula, it comes out to zero. Yes. So do I understand correctly that the district judge addressed the first but not the second? I think that the district judge – yeah, I don't think he addressed that second argument. Well, the big picture argument here is that both Michigan law and the terms of the agreement preclude just a simple contract. I mean, that's Michigan law, but it's kind of – it's one, the same argument, but also sort of a dual argument. One a legal one and one that has to do with the interpretation of particular agreements in question. Yes. Is that analytically a good adequate description of your position? Yes. And to answer your question, I honestly don't think he addressed either one. I think Judge Friedman said, well, there was a breach. It's been determined. Plaintiff did this formula, and I think he just accepted – he accepted that what they did was they added the completion cost for the project from both loans, which was $52 million, and subtracted out the original budget for the construction to get a $20 million cost overrun. But the cost overrun's already been paid, and he didn't consider that, which is why they filed the motion for reconsideration. And then he said, oh, I did consider it, and it's denied. But I didn't see an analysis of actual costs paid or for which there was a judgment. I don't think you can – I believe plaintiff is arguing there can be two judgments, and after we collect on one, we won't collect on the other, but there's nothing precluding that. And I think if they have two judgments that total $34 million, they're going to collect on all $34 million. Well, wait a minute. So let's go back, because that's where I started. Assuming that it is acknowledged that they can't collect more than their actual damages, it doesn't really matter whether they collect on the Michigan judgment or a judgment here that's limited to the deficit, right? The judgment here at first was wrongly calculated. It's what? It's wrongly calculated. And number two, if they collect on the 14, there are no more damages. So this one has to be reversed, otherwise they will collect on both. But both will be against the same person or entity, right? Yes. Yes. You'll have your rebuttal time. Thank you. Good afternoon. May it please the Court. Philip DeRozier appearing on behalf of the plaintiff at Pelley, Canfor, Packard Square, LLC. I'm going to hopefully try to simplify this. We'll see. We think that the fatal flaw in Mr. Schubiner's position is essentially that it goes to the manner in which Canfor applied its credit bid in the foreclosure sale. And Mr. Schubiner, and that was a combined indebtedness. We've talked a lot about how there was the receiver loan. There was Packard Square's original loan. That resulted in a combined indebtedness. Do you concede that you cannot collect on both of these judgments? I would concede yes. So why isn't it more appropriate to make the legal determination on the front end than rely on some concession you've made and your forbearance in collection? I mean, why isn't it more appropriate for a court to delineate the extent to which you can collect on these two judgments than for you to do it on your own, presumably, at the point at which you collect on one of them? Your Honor, I think the most direct answer is that the law certainly prohibits double recovery. So the question is why is that appropriate for you, not for us, to decide? Well, and I think this goes maybe to Judge Nobandian's question, which is about the separateness of these two cases. They are separate calculations. They're separate guarantees in each case. And so the problem is the argument is essentially that you provided more than one mechanism for being compensated, and so therefore this court has no role in it? No, Your Honor. I think that the injuries in the cases are different. Each of the guarantees go to different things. So on the one hand, in the foreclosure case that was in state court, that resulted in a judgment that reduced, and then after the foreclosure sale application of Canfor's credit bid, it reduced the indebtedness, which was as of November of 18, to a certain amount. So that was $81 million, and then the credit bid was applied. And this is also, if you keep in mind, the construction was ongoing. There are additional costs, interest, attorney fees, consulting fees. So it's an ongoing calculation. But the really, I think, salient point is the two cases involve completely different contracts and different obligations. And so our position would be that we are entitled to enforce our rights in each case under each set of different obligations. With the understanding that to the extent that there is double recovery, we can't do that. So what I would say is that the double recovery question just isn't before this court at this time, and it wasn't before the district court because under the law, Canfor can't recover two separate recoveries for the same damage. But that doesn't preclude going at two. It isn't that true as a legal matter. You have the $14 million judgment. You have the $75 million credit bid. It's $89 million, roughly. That's what you were out of pocket, basically. So that's it. I mean, as a legal matter, you have the legal entitlement to $90 million. That's the exact amount that you're out of pocket, basically, give or take, whatever. But why doesn't that end on the double recovery theory? Well, because there hasn't been a collection. But why does that matter? I mean, in other words, it's just the remedy. You're entitled to the remedy. You have a legal judgment. You have an enforceable judgment. You haven't collected it yet. But as a practical matter, it's against the same person. If you can't collect the one, you're not going to collect the other one, right? We wouldn't have to resolve the case by saying which one you could collect on, necessarily. But we could clarify, as a legal matter, that you can't collect on both. I think that I would agree that CANFOR can't receive payment, can't actually collect in a way that results in double recovery. But that hasn't happened yet. And so, Judge Zeldmanian, to your point, maybe as a practical matter, sure, there's some overlap. But, number one, it's meaningful because the calculations are different. So I think that, one, the foreclosure proceeding calculation, that was in November, the completion cost deficiency, which has a different formula. Why is it important to you to prevail in this case? Because... Proceed that there can be no double recovery, and that's the legal principle. Because the problem is, is that if we don't prevail in this case, then that is a, the judgment, well, I mean, as the most practical response is, I mean, the judgment is $20 million. The deficiency judgment in Oakland County Circuit Court, in connection with the foreclosure, is 14. So, you know, there's a delta there, number one. But the delta isn't based on anything. The delta ignored... Look, you were the one who allocated the $75 million, right? You chose to wipe out the receiver's loan with all its cost. And that parallels the completion guarantee. Are you saying that there were damages under the completion guarantee that weren't covered by the amount you allocated to the receiver's loan? Your Honor, no. That's not my position. My position would be that the accounting allocation, in one case, under a set of agreements that are different than here, there's no legal authority, in our view, to take a combined indebtedness and the way that Canfor applied its credit bid to arrive at that deficiency, that that equates to payment here for purposes of double recovery. I think in three different ways we're trying to ask you the question, are you claiming that there are amounts due on the face of the completion guarantee that were not covered by the amount allocated out of the $75 million to the receiver's loan? Well, just looking at that question alone, yes. This is a $20 million deficiency after all the calculations are done. So there is more at issue here than there was... How much did you allocate out of the $75 million to the receiver's loan? We allocated, for purposes of application of the credit bid in that case, $37 million. Okay. Are you saying that there's more than $37 million owed under the receiver's loan, I mean under the guarantee, under the formula? Well, there's interest. There are attorney fees, consulting fees. So there is more that's included in this calculation in our case than was in the other case. I'm asking, I think I'm asking a direct question. I apologize. Are you saying that the $37 plus million that you allocated out of the $75 million did not cover what was due under the guarantee? Your Honor, that's exactly what I'm saying. I think what you are getting at is I would agree that for purposes of the formula in this case, and it's right in the record, so this is the chart and it's in our complaint. It's Paragraph 39, and that's Record Entry 1, Exhibit 1. So if you look at the chart, and the district court also relied on it, I would agree with you that in doing the calculation here, just over $34 million falls under costs expended by the receiver. In the foreclosure case, in doing the allocation of the credit bid, I would also concede, as I must, because, again, it's in the record. These are just facts. It was just over $37 million of the foreclosure proceeds that were allocated in that case to the amount owed by the receiver under the receiver's loan. I mean, that's as direct as I can, I think, possibly be in answer to your question. But are you claiming the $20 million? In terms of the double recovery, are you saying actually 20 is the number and not 14? So what you really want to enforce is 20 and not 14? I'm saying that I acknowledge that there's some overlap, and I acknowledge that we can't add them together and get all of them. But how can you acknowledge that there's overlap but also argue that they're, I mean, they're completely different calculations? They are. One is a very straightforward deficiency of a payback and an enforcement of a guarantee. This one, honestly, I'm just confused by where the $20 million comes from under 3C because I don't really follow the calculation. But you're saying it's a completely different calculation, and yet there's overlap. But I don't know, why is there overlap then? Why are you acknowledging there's overlap? Well, because although there's overlap, there are two different judgments. And so until those judgments, one or the other, until they are collected, until they are paid, there is no double recovery. And I think this gets to Judge Gibbons' very early question. That's why double recovery here is a premature determination. But don't we, like for purposes of preclusion, we look at judgments. We don't look at satisfaction of judgments, do we? Well, but that's not, under a double recovery analysis, I just don't think that's the correct legal framework. Well, you haven't tried to collect on either of these judgments, right? And there's nothing prohibiting you from collecting on the state court judgment at this point. Is that right? Well, it's been until just recently, that judgment has been on appeal in the state courts. The Michigan Supreme Court has denied leave, just denied reconsideration actually last week. And now you're free to try to collect. Now we are free. Are either of the judgments collectible? Yes. Well, we think they are. At least to some degree. We have a whole set of lawyers. But is this one bonded off right now? No, none of this is bonded off. So have you instituted collection proceedings? In this case, we have instituted collection proceedings. In this case, you have. Yes, and there's property in Colorado that there's a proceeding in that state that we're going after to try to collect on this judgment. But neither of them have been paid. I'm sorry. Apparently, I didn't understand your answer. You allocated 37 towards what you called the receiver's loan. Correct. Okay. And I think you started to say that more than that was owed under the guarantee. But then I didn't understand your explanation. Okay, Your Honor. I apologize. The point I'm making there is that for purposes of the formula, which I appreciate, it is very convoluted in the completion guarantee. But when you look at the numbers in the formula, there is a $34 million amount that is incorporated as a cost expended by the receiver. But you also have other numbers. And I'm just trying to make this as simple as possible. When you look at that formula, there are other numbers in there. Yes, but when you add them all up, you allocated 37, right? In the other case, yes. Oh, in the other case. How much did you allocate to the receiver's loan? We allocated, and again, I appreciate that we're kind of passing each other. But the important thing in our view is that the allocation that took place in a different case under a different set of obligations, that is where. I'm trying to find out whether and what you were paid on the guarantee. So how much did you allocate to the receiver's loan that was not allocated to the original loan? In the other case, the entire amount of what was owed under the receiver's loan as of November of 2018, the credit bid was applied to that amount. Okay, so that's the first time I've gotten a straight answer. So you're saying that the only amounts that were not allocated to the original guarantee and which were allocated to the receiver's loan was the actual balance on the loan without any of the hard and soft costs? Well, Your Honor, there are two separate guarantees, though. So in the State court case, the foreclosure case, and then the related action for the deficiency, that was under a totally different guarantee. I know. But that's why I feel like we are mixing. I'm sorry. You have to focus on what I'm trying to resolve. There was a certain amount of money after you bid in the $75 million. They were allocated in two different directions. Is that correct? That is not correct. Well, I guess there's a lack of specificity, respectfully, Your Honor, there. In two different directions, I don't understand what you mean by that. Some of it was allocated toward one obligation. Toward the receiver's loan, correct? Yes, and some of it was allocated towards the original note. Of Packard Square, yes, the owner of the project. Okay. Two loans in that first case. Okay. So the portion that was allocated towards the receiver's loan, how much was that? That was the $37.8 million. Okay. Then I was trying to get a simple answer, not why it's wrong to look at it this way, a simple answer to the question. If you apply the formula under the completion guarantee, which includes different things, what does that number come out to be? Well, in terms of the, are you just asking about the receiver, or what does the entire number come out to be? What I sense is we're both, I think, talking about the same thing is what is attached to the receiver for purposes of the completion guarantee calculation, and what was attached to the receiver in the other case, right? If I understand you correctly. So that's why I'm saying the amount, the costs expended by the receiver for purposes of calculating the completion cost deficiency, that was the $34,945,000. But what does the formula come out to? Does it come out to the 20 that you recovered? I mean, if you do that formula, what does it come out to? Well, it comes out to the deficiency judgment that the district court entered, which was $20 million. Now, if you accept it as a legal matter, Mr. Shubiner's position, that you have to back out the 34, then that number would be lower. But our position is you don't back that out. Now, let's say you accept that position that some of this is compensating for the same loss. How much remains uncovered, if any, once you account for the, not the nature of the guarantee, but the nature of the loss? Do you concede that the 37 covers all of it? Yes. I guess if we are proceeding on the assumption that the amount attributed to the receiver's loan in the foreclosure case, that that can be applied here to offset in some way the amount that was attributable to the costs expended by the receiver, if, as a matter of law, you can conflate those two things, then I would agree with you. Yes. Pardon? Yes. I'm sorry. Your time's up, but I'm going to ask you one question that goes kind of to the way I'm viewing this case at this point. I think this case is not as much about understanding the two judgments and what portions of them are double recovery. You said in your brief, nor does Shubner's double recovery argument have any substantive merit. But I think you've told us today that it does have substantive merit, and the bottom line is you just don't want us to disturb either judgment, and you want to be able to collect your money in whatever way you want to, whether it's collecting the Federal judgment or the State judgment, and you want us not to reaffirm the principle of no double recovery, but leave it to you to enforce it upon yourself in the collection process. Is that not about it? Your Honor, I respectfully disagree. What's wrong with that? I don't agree, and I haven't conceded agreement with Mr. Shubner's substantive argument. But to the extent that you concede there is double recovery in these two judgments, that to me is the substantive merit of his argument. What's left is whether that means we should disturb the Federal judgment or not. There's an if in there, though, Your Honor. I think that's really maybe I'm not making myself clear enough. I don't believe that under the law there's a double recovery until there is a double recovery. Just having two judgments is meaningless until one or the other is paid. Isn't that still because of the distinction between collection and a judgment? It is a difference between collection and a judgment, yes, Your Honor. I think what I was saying is you think that makes a difference in what we should do here. I think it does, because there has not been double recovery yet. Can I just ask one more question? Sure. Okay. Assuming, okay, let me be as direct as possible. What elements under the formula were not covered by the 37 assigned to the receiver's loan? What things that you're entitled to under the formula would not have been covered by that? I'm trying to think of the best way to go at this, because, again, appreciating that this is a complicated formula. Well, there is the, number one, there is this reference settlement with Quandel, which is in the chart. There are built-in also to this number, there's interest, there's the attorney fees, there are the consultee fees. There are those things that were not included in the deficiency or in any of the calculations in the other case that are included here. And I apologize, I don't have all of those specific numbers. No, but I'm not talking about the other case. Sure. Were you entitled to these things under the guarantee? Yes, yes, Your Honor. Okay. Thank you. All right, Ms. Klima. Thank you, Your Honor. Just to address a couple of things. I believe all the fees, all the interest, everything was already in the Oakland judgment. The Oakland judgment came down. The basis for the calculation was in plaintiff's summary judgment motion, which was based on this Goldman affidavit, 129-17. It has, and this is eight months after the project is completed, so there's no more costs after this. Everything should be known at this point. It has interest from 2014 through 2019. It has interest added into the receiver loan. It has interest on the original loan. Wait, is this the 14 million judgment? Yes, yes. Why does that have receiver loan stuff in it when it's only, the guarantee on the original loan? Because the 75 million credit bid was applied to pay off the receiver loan, and in this judgment it was the highest amount. That number is varied from each case. Right. The very highest amount, and there was only one loan, so that left 37 million left out of the proceeds to pay the original loan and all the interest and fees. So the original loan is around 33 million, so that's wiped out. So both loans, all construction costs have been paid. There's another around 20 million or so of interest. Some has been paid, some has not, and that's what the 14 million has left. But it's on the original loan only? All the costs. Yeah, all the interest and fees for the receiver loan is in that 37. If you go to the description. Right, the receiver loan is done. Yes. Attorney fees are paid, receiver loan is paid. So the 14 million plus the 38 million or whatever would have been allocated to the original loan from the 75, that's all associated with the original loan, right? Which part? The 14 plus the 38. That's all associated with the original loan? The original loan plus the cost to complete the project after foreclosure. That's in that 14 million also. Wait, the cost to complete, wouldn't that be part of what the receiver spent? Well, yes, but it was after foreclosure, so it was added in. It wasn't taken out. After foreclosure and after the receiver loan had been paid? Right, right, yeah. So they took the receiver loan through foreclosures, this 37 million. So that's part of the guarantee? I'm sorry? I think Judge White asked if that was part of the guarantee. But that's part of the guarantee, those extra costs. Yes, and it's in this judgment. Huh? And it's in this judgment right here, 1.6 million. And it should have been in this case, but they accepted it. That they took it in that case. That's right, okay. Can I? Yes. I did not have time to go back through everything in this case because my materials were in Cincinnati and I was in Chicago, so if this is a stupid question, please tell me so. It looks to me like the district court talked about res judicata, but didn't really talk about double recovery. Did you clearly raise both distinct arguments? The arguments are somewhat distinct. Yes. Did you clearly raise the double recovery argument in the district court? In my client's motion for summary, there's a lot of time spent on res judicata. That issue was lost. We didn't appeal it. The language in the agreements allow two different lawsuits. They don't allow two recoveries of the same death, though. So I will point that out. In our response to plaintiff's motion for summary judgment, there's a whole section on double recovery. My question is, despite the district court's failure to discuss it, or apparent failure to discuss it based on my flipping through the opinion again, you raised it clearly. And I don't understand your adversary to claim otherwise. Correct. And just one more point. What is your response to the point that double recovery doesn't kick in until they actually satisfy or collect the judgment? I do not think that is Michigan law. I look through every single case cited by both parties, and nothing supports that. There is no case saying you get two judgments for the same death, and it's up to you after you collect to not collect on the other and we'll just trust you. The double recovery principle is triggered by the judgment itself. Would that apply if you had multiple defendants? I mean, you'd say one person is solely liable for one death, and you have overlap, and the other one is guaranteed by two people. Right. Then there would be an offset. Right, once you collect, but not on the judgment, would there? Well, there could be like a joint liability and a judgment, correct. You see that a lot in indemnity cases. Okay. Thank you both for your answers. Thank you. We'll consider the case carefully.